Filed 10/1/20  P. v. Badry CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>  v.<br><br>ABDEL ALIEM EL BADRY,<br><br>       Defendant and Appellant. | C090714<br><br>(Super. Ct. No. 16F013497) |

Defendant Abdel Aliem El Badry lured a woman to his house under the false pretense of offering her a job cleaning his house and sexually assaulted her.  A jury found defendant guilty of penetration with a foreign object and false imprisonment.

On appeal, defendant contends the trial court (1) abused its discretion by admitting evidence of two prior acts of sexual misconduct, and (2) erred by denying his motion to suppress evidence collected pursuant to a search warrant he claims was not supported by probable cause.  Finding no error, we affirm.

1

**FACTS AND PROCEEDINGS**

*Doe Incident*

On or about May 23, 2014, Maria Doe was working picking up trash and selling tamales out of her car. Defendant approached her and offered her a job cleaning his house. Doe followed defendant to his house in her own car to give him an estimate for the work.

Doe and defendant entered the property through a gate and the house through the front door, both of which defendant locked behind him. Defendant showed Doe the kitchen, a bedroom, and the back yard. They went into another bedroom, and defendant pushed Doe onto the bed. He put his hands and a leg on her. She could not push him off. Defendant opened a box next to the bed and took out two dildos, one of which was "pinkish," "almost white" in color, and the other darker. Doe saw another sex toy in the box, which looked "like a butterfly, different colors."

Defendant pulled off Doe's pants and underwear, and penetrated her vaginal area with the pinkish dildo. Doe testified defendant also put his penis in her mouth.

Doe's phone rang, and defendant complied when she asked him to let her up. She said she had to deliver some tamales and that she would come back later. She got dressed and left the house.

Doe told her boyfriend and her daughter about the incident, but she did not call the police. On June 26, 2015, Doe told a woman working as a security guard about the incident, and the security guard called the police. Doe subsequently told police officers what had happened, described defendant, and took them to defendant's house, where they saw the same truck defendant drove on the date of the incident.

Police obtained a search warrant and conducted a search of defendant's home. Pursuant to the search, officers found a black bag in defendant's bedroom containing 12 sex toys and other objects. Doe identified two of the sex toys as used on her.

2

*Prior Sexual Misconduct Related to K.H.*

The trial court admitted evidence of two instances of defendant's prior sexual misconduct.[1]

In February 2003 defendant approached K.H. and her husband at a homeless shelter, where they were waiting to get food. Defendant offered them work at his residence, and he drove the couple to his home. Defendant instructed K.H. to wait inside and watch his son while he instructed her husband on needed yardwork.

Defendant then came back inside, started to massage K.H.'s back or shoulders and touched her buttocks, and did not stop when she asked him to. K.H. picked up defendant's son, hoping that would cause him to leave her alone.

Defendant went back outside, and K.H. attempted to follow him. He pushed her and told her neither she nor his son were allowed outside. K.H. went to the front door, but it was locked. Defendant grabbed K.H.'s arm, pushed her into the laundry room, and grinded his groin against her from behind. He appeared to be aroused. He pushed her shoulders down and said he "needed to feel the bone on [her] butt or [her] back." He told her to take her pants off. K.H. was trying to leave, but defendant would not let her.

Defendant's son walked into the laundry room, and defendant stopped. K.H. grabbed her belongings and went outside. She told her husband defendant had tried to rape her. K.H. and her husband ran to a nearby store and called the police.

As a result of that incident, defendant pled guilty to felony false imprisonment.

*Prior Sexual Misconduct Related to A.A.*

In November 2013 A.A. and her boyfriend were homeless and walking towards a motel to rent a room. Defendant drove up to the couple and offered them paid work on

---

[1] Defendant contests the trial court's ruling admitting the other acts evidence, which we will discuss *post*.

his house.  He offered to show them what needed to be done and then drop them off at the motel.

A.A. and her boyfriend agreed, and they got in defendant's truck.  They all sat in the front bench seat, with A.A. in the middle.  On the ride, defendant began rubbing A.A.'s leg.  A.A. was uncomfortable, but she did not say anything because she and her boyfriend needed the work.

At defendant's house, defendant repeatedly stood "right behind" A.A. so she would bump into him whenever she moved or turned.  She felt uncomfortable, so she told defendant they would consider the work but needed to check into their motel.  Defendant drove the couple back to the motel, and he continued rubbing A.A.'s leg and arm on the drive.  She did not say anything because he did not want defendant to throw them out of the car on the side of the freeway.

When they arrived at the motel, A.A.'s boyfriend went inside to check in.  Defendant told A.A. to write down her phone number if they were interested in the work.  As she wrote down her phone number, defendant reached his hand up her sleeve and tried to grope her breasts.  A.A. pulled away quickly, grabbed her belongings, and ran around the side of the motel.

When A.A. and her boyfriend got into their room, defendant attempted to call A.A.  Defendant walked around the motel for five to 10 minutes looking for them before giving up and leaving.  A.A. called the police when defendant left.  A.A. did not want to press charges; she told police she just wanted "it to be noted . . . that he had tried something . . . in case it ever happened again."

*Procedural History*

The jury found defendant guilty of penetration by a foreign object (Pen. Code, § 289, subd. (a)(1); count one) and false imprisonment (Pen. Code, § 236; count two).  The trial court found defendant ineligible for probation and sentenced him to the upper

4

term of eight years in prison on the penetration count and stayed imposition of the sentence on the false imprisonment count pursuant to Penal Code section 654.

Defendant timely filed a notice of appeal. Additional facts will be set out in the Discussion as necessary.

## DISCUSSION

### I

*Evidence Of Uncharged Offenses*

Defendant contends the trial court abused its discretion by permitting the prosecution to introduce evidence of the incidents involving K.H. and A.A. under Evidence Code sections 1108 and 1101, subdivision (b).[2] He argues: (1) the evidence was inadmissible under section 1101, subdivision (b) because the uncharged acts were insufficiently similar to the charged offense; (2) evidence of the incident involving K.H. was inadmissible under section 1108 because defendant was not convicted "of any sex offense" regarding that incident; and (3) even if evidence of the incidents involving K.H. and A.A. were admissible under section 1101, subdivision (b) and section 1108, the evidence should have been excluded due to "the exceedingly prejudicial nature of the evidence."[3] We disagree.

A. *Legal Background*

Section 1101, subdivision (a) establishes a general rule that character evidence is not admissible to prove a defendant's conduct on a specific occasion. That general rule is

---

[2] Further undesignated statutory references are to the Evidence Code.

[3] Defendant also argues that section 1108 unconstitutionally deprives him of his right to due process under the Federal Constitution. However, defendant acknowledges that our Supreme Court has held section 1108 does not violate a defendant's right to due process. (*People v. Falsetta* (1999) 21 Cal.4th 903, 917.) We are bound to follow *Falsetta*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Therefore, we reject defendant's claim.

subject to two significant limitations.  First, under section 1101, subdivision (b), evidence that defendant committed a "crime, civil wrong, or other act" may be admissible to prove "some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

Second, the general rule stated by section 1101, subdivision (a) is limited by section 1108, which provides in relevant part:  "(a)  In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."  Therefore, where evidence is admissible under section 1108, the limitations of section 1101 are inapplicable.  (*People v. Britt* (2002) 104 Cal.App.4th 500, 505-506 (*Britt*).)  As stated by our Supreme Court, section 1108 " ' "permits courts to admit such evidence on a common sense basis--without a precondition of finding a 'non-character' purpose for which it is relevant--and permits rational assessment by juries of evidence so admitted.  This includes consideration of the other sexual offenses as evidence of the defendant's disposition to commit such crimes, and for its bearing on the probability or improbability that the defendant has been falsely or mistakenly accused of such an offense." ' [Citation.]" (*People v. Falsetta*, *supra*, 21 Cal.4th at p. 912.)  "Nearly every published opinion interpreting section 1108 (including some from [our Supreme Court]) has recognized that this provision allows, when proper, evidence of prior uncharged sexual offenses to prove propensity.  [Citations.]" (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1160.)  Section 1108 applies to both charged and uncharged prior sexual misconduct.  (*Villatoro*, at p. 1164.)

Where, as here, the trial court admitted testimony under both sections 1101 and 1108, we will find error in its admission only if the testimony were inadmissible under

6

both sections.  (*People v. Branch* (2001) 91 Cal.App.4th 274, 280-281 (*Branch*).)  In other words, if the other acts evidence is admissible under section 1108, we do not need to consider whether the evidence is also admissible under section 1101.  (See *People v. Erskine* (2019) 7 Cal.5th 279, 295-296 (*Erskine*) [where evidence is admissible under section 1108, it is not necessary to assess whether the evidence is also admissible under section 1101]; *Britt*, *supra*, 104 Cal.App.4th at p. 506 [the trial court correctly admitted testimony of uncharged acts under section 1108; therefore, the court did not address admissibility under section 1101].)

B.  *Analysis*

In order to address defendant's arguments regarding the admissibility of the evidence of his prior sexual misconduct, we must first determine whether the evidence of the incidents involving K.H. and A.A. was admissible under section 1108.

Section 1108, subdivision (a) provides that only evidence of a qualifying "sexual offense" may be admitted under that section.  Section 1108, subdivision (d) defines "sexual offense" in part as any "sexual battery" or attempted sexual battery as defined by Penal Code section 243.4.  Penal Code section 243.4, subdivision (e)(1) provides that a person commits "sexual battery" in if the person "touches an intimate part of another person, if the touching is against the will of the person touched, and is for the specific purpose of sexual arousal, sexual gratification, or sexual abuse."  "Touches" is defined as "physical contact with another person, whether accomplished directly, through the clothing of the person committing the offense, or through the clothing of the victim." (*Id.*, subd (e)(2).)  "Intimate part" is defined as "the sexual organ, anus, groin, or buttocks of any person, and the breast of a female."  (*Id.*, subd. (g)(1).)

The incidents involving K.H. and A.A. both satisfy the definition of "sexual offense" in section 1108, subdivision (d).  K.H. alleged that defendant pressed his groin up against her buttocks while appearing aroused.  This satisfies the requirements of a sexual battery for purposes of Penal Code section 243.4, subdivision (e)(1).  Similarly,

A.A. testified defendant reached his hand up her sleeve and attempted to touch her breast, only failing to do so because she pulled away from him. This constitutes an attempted sexual battery under Penal Code section 243.4, subdivision (e).

Because defendant's prior acts of sexual misconduct are admissible under section 1108--subject to the court's determination regarding section 352, which we discuss *post*-- we do not need to consider whether the evidence is admissible under section 1101. (*Erskine*, *supra*, 7 Cal.5th at pp. 295-296; *Britt*, *supra*, 104 Cal.App.4th at p. 506.) We also reject defendant's argument that the incident involving K.H. is inadmissible because it did not result in a sexual offense conviction. To be admissible as a prior sexual offense under section 1108, there is no requirement that the offense be charged or result in a sexual offense conviction. (See *People v. Villatoro*, *supra*, 54 Cal.4th at p. 1164 [section 1108 applies to both charged and uncharged prior sexual misconduct].)

Defendant asserts that even if the evidence is otherwise admissible under section 1108, the trial court abused its discretion by not excluding the evidence under section 352. Section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." "We will reverse only if the court's ruling was 'arbitrary, whimsical, or capricious as a matter of law. [Citations.]' " (*Branch*, *supra*, 91 Cal.App.4th at p. 282.)

" '[S]ection 1108 affects the practical operation of . . . section 352 balancing " 'because admission and consideration of evidence of other sexual offenses to show character or disposition would be no longer treated as intrinsically prejudicial or impermissible. Hence, evidence offered under [section] 1108 could not be excluded on the basis of [section] 352 unless "the probability that its admission will . . . create substantial danger of undue prejudice" . . . substantially outweighed its probative value concerning the defendant's disposition to commit the sexual offense or offenses with

which he is charged and other matters relevant to the determination of the charge. As with other forms of relevant evidence that are not subject to any exclusionary principle, *the presumption will be in favor of admission.*' " ' " (*People v. Loy* (2011) 52 Cal.4th 46, 62.)

"Undue prejudice" in the context of section 352 " 'is not so sweeping as to include any evidence the opponent finds inconvenient. Evidence is not prejudicial, as that term is used in a section 352 context, merely because it undermines the opponent's position or shores up that of the proponent. The ability to do so is what makes evidence relevant. The code speaks in terms of *undue* prejudice . . . . " 'The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying section 352, "prejudicial" is not synonymous with "damaging." ' [Citation.]" [Citation.]

'The prejudice that section 352 " 'is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.' [Citations]. 'Rather, the statute uses the word in its etymological sense of "prejudging" a person or cause on the basis of extraneous factors. [Citation.]' [Citation.]" . . . In other words, evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose.' [Citation.]" (*Branch*, *supra*, 91 Cal.App.4th at p. 286.)

"As to admissibility under section 352, evidence of past sexual offenses proffered under section 1108 requires the court to 'undertake[ ] a careful and specialized inquiry to determine whether the danger of undue prejudice from the propensity evidence substantially outweighs its probative value.' [Citation.] Among the factors to consider

9

are the ' "nature, relevance, and possible remoteness [of the evidence], the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses." ' [Citations.]" (*Erskine*, *supra*, 7 Cal.5th at p. 296.)

The evidence of defendant's prior sexual misconduct is highly relevant to show his propensity for committing sex crimes. "[A] 'prior sexual offense is indisputably relevant in a prosecution for another sexual offense.' " (*Branch*, *supra*, 91 Cal.App.4th at pp. 282-283.) "Indeed, the reason for excluding evidence of prior sexual offenses in such cases is not because the evidence lacks probative value; rather, it is because ' "it has too much." [Citation.]' " (*Id*. at p. 283.)

With respect to the remoteness of the prior offenses, no bright line rule exists. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 405 [12-year gap not too great]; *Branch*, *supra*, 91 Cal.App.4th at p. 284 [30-year gap between offenses is "substantial," but similarity between offenses can balance out remoteness]; *People v. Harris* (1998) 60 Cal.App.4th 727, 739 [finding a 23-year gap between sexual offenses with no intervening criminal conduct militates against admission].) The incident involving K.H. occurred in 2003, the incident involving A.A. occurred in 2013, and the charged offense occurred in 2014. The 11-year gap between the K.H. incident and the charged offense is less than the 12-year gap in *Ewoldt*, which our Supreme Court observed was not too great. Additionally, the incident involving A.A. occurred between the K.H. incident and the charged offense, which narrows the gap between defendant's incidents of sexual misconduct.

Moreover, the evidence regarding defendant's previous misconduct is quite similar to the charged offense, which balances out any remoteness. (See *Branch*, *supra*, 91 Cal.App.4th at p. 284.) In each instance, defendant lured a vulnerable woman to his

10

home under the guise of a job opportunity. Defendant went through the motions of discussing the work before making unwanted sexual advances. Defendant points to the differences between the incidents: both of the prior incidents involved both a man and a woman, both couples rode in defendant's car rather than their own car, both K.H. and A.A. remained clothed, and neither prior incident involved sex toys. But while we agree there are slight differences in the details of each incident, we conclude the similarities of defendant's preferred method of luring financially vulnerable women to his home with the promise of a paying job but actually for purposes of making sexual advancements toward them far outweigh the differences present in each incident. The remoteness of the incident involving K.H. does not militate against admitting the evidence.

Next, we consider whether the admission of the prior instances of defendant's sexual misconduct was likely to confuse the issues before the jury. As we have noted, one of the two prior incidents was never prosecuted and the other resulted in a conviction for felony false imprisonment. Our Supreme Court has recognized that a prior offense not resulting in a conviction could increase the likelihood that the jury (1) will attempt to punish defendant for the uncharged offenses and (2) confuse the issues because the jury has to determine whether the uncharged conduct actually occurred. (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 405.) Here, nothing in the record suggests that either woman involved in defendant's prior instances of sexual misconduct was not telling the truth, and nothing in the record suggests the jury was confused or attempted to punish defendant for his previous misconduct. Evidence of each prior incident included the testimony of a single witness, which reduces the risk of confusing the jury by conducting a trial within a trial. Because only one witness testified in a straightforward narrative as to each incident and was subject to cross-examination, the burden on defendant to defend against the evidence was not excessively onerous. Similarly, we conclude there was no possibility of admitting less prejudicial evidence supporting each incident; offering a single witness to

11

testify about each prior incident and subjecting that witness to cross-examination is nearly the bare minimum that the prosecution could have done to admit the evidence.

Additionally, the charged offense includes defendant forcibly removing Doe's pants and using a sex toy to penetrate her vagina. That conduct is more inflammatory than either of the previous incidents. We see nothing in the record to suggest that evidence of the prior incidents would have inflamed the jury to convict defendant based on the other incidents and not based on the charged conduct.

Finally, defendant argues the trial court twice repeated that defendant had in fact committed the prior offenses. But defendant only points to the following sentence by the court: "You may also hear evidence of the defendant's prior acts of other behavior of sexual misconduct, which would be offered, in part, to show that the defendant had a common plan, a motive, or an intent to commit sexual misconduct." We disagree the court's statement amounts to the court asserting that defendant had committed the previous offenses. The court's statement simply informed the jury that it may *hear evidence* of defendant's prior acts, not that defendant had indeed committed those acts. Moreover, before trial defense counsel expressly agreed to the court's phrasing.

We conclude the trial court did not abuse its discretion by admitting the evidence under section 1108 or by not excluding the evidence under section 352.

II

*Motion To Suppress Evidence*

Defendant contends the trial court erred by denying his motion to suppress evidence obtained pursuant to a search warrant. He argues the warrant should not have been issued because the information used to obtain the warrant was too stale to provide probable cause that the sought-after evidence would still be in defendant's residence so long after the offense occurred. Specifically, he claims the warrant "failed to provide any evidence that sex toys would be in the residence almost two years" after the crime.

12

Because we conclude there was probable cause to issue the warrant, we reject defendant's contention.

A. *Factual and Procedural Background*

The incident giving rise to the charges occurred on or about May 23, 2014. Doe informed the police of the incident on June 26, 2015. Pursuant to Doe's report and following additional investigation, in April 2016 a detective applied for a warrant to search defendant's home for, among other things, the sex toys Doe observed in the house.

The warrant application's statement of probable cause included a summary of Doe's interactions with police. Doe described the incident and described the truck defendant drove. She stated defendant grabbed a pink-colored sex toy and a multi-colored "butterfly" sex toy and used one of them to penetrate her vagina. In a follow-up interview, Doe stated defendant grabbed two dildos--one pink and one white--and that she saw the butterfly-shaped sex toy. She said all three toys were in a black box located on a table next to the bed. Doe brought officers to defendant's house, where she identified defendant's truck. Doe was unable to identify defendant in a photo lineup.

The statement of probable cause stated defendant's address as the house Doe identified for officers, listed several vehicles as registered to defendant--including the truck Doe identified at defendant's house--and described multiple police reports of other instances of sexual assault involving defendant.

The affiant stated: "[M]y training and experience has taught me that it is common for sexual assault suspects to keep mementos, trophies, diaries, journals, records and other writings, in order to memorialize their sexual experiences, encounters and fantasies. These mementos may include photographs, CD's, DVD, videos, and/or computer images. These mementos will be maintained within their computers, homes, vehicles, storage facilities, etc." He also asserted that sexual offenders collect and use "sexually explicit materials" and "rarely, if ever, dispose of their sexually explicit materials, especially when it is used during the commission of their crimes, and those materials are treated as

13

prized possessions." Further, the affiant stated: "These people go to great lengths to conceal and protect from discovery, theft, and damage, their collections of illicit materials," and "often keep mementoes or 'trophies' of their encounters with specific victims as a means of remembrance."

The affidavit was signed on April 6, 2016, and executed on April 7. Police officers seized various sex toys later introduced as evidence against defendant at trial, including the two Doe subsequently identified.

Before trial, defendant moved to suppress evidence of the sex toys under Penal Code section 1538.5; he argued the information supporting the warrant application was stale and could not supply probable cause for the search. The trial court denied the motion. The court noted the affiant's assertion that people who commit sex crimes "frequently, and I would say overwhelmingly, retain evidence of those crimes." The court stated its view there "was sufficient probable cause to believe that the Defendant still possessed that evidence . . . ."

B. *Legal Background*

"In reviewing a search conducted pursuant to a warrant, an appellate court inquires 'whether the magistrate had a substantial basis for concluding a fair probability existed that a search would uncover wrongdoing.' [Citation.] 'The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' (*Illinois v. Gates* [(1983)] 462 U.S. [213,] 238.) The magistrate's determination of probable cause is entitled to deferential review. [Citation.]" (*People v. Carrington* (2009) 47 Cal.4th 145, 161 (*Carrington*).)

If the particular case is on the margins as to the question of probable cause, we generally uphold the warrant. (See *People v. French* (2011) 201 Cal.App.4th 1307, 1315

14

["because '[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause,' . . . ' "doubtful or marginal" ' cases are to be resolved with a preference for upholding a search under a warrant"].)

The showing of probable cause "must appear in the affidavit offered in support of the warrant." (*Carrington*, *supra*, 47 Cal.4th at p. 161.) If the affidavit does not provide probable cause to believe material to be seized is still on the premises to be searched when the warrant is sought, the affidavit does not demonstrate probable cause for the search. (*People v. Cleland* (1990) 225 Cal.App.3d 388, 393.)

"[L]aw enforcement officers may draw upon their expertise to interpret the facts in a search warrant application, and such expertise may be considered by the magistrate as a factor supporting probable cause." (*People v. Nicholls* (2008) 159 Cal.App.4th 703, 711.) The magistrate is equally entitled to rely on "the conclusions of experienced law enforcement officers in weighing the evidence supporting a request for a search warrant as to where evidence of crime is likely to be found. [Citation.] It is not essential that there be direct evidence that such evidence will be at a particular location. Rather, the magistrate ' "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." ' [Citation.]" (*People v. Sandlin* (1991) 230 Cal.App.3d 1310, 1315.)

Probable cause to support a search cannot properly be based on old, stale information. "[I]nformation is stale, and hence unworthy of weight in the magistrate's consideration of an affidavit, unless the information consists of 'facts so closely related to the time of the issue of the warrant as to justify a finding of probable case at that time.' [Citations.]" (*Alexander v. Superior Court* (1973) 9 Cal.3d 387, 393; see *People v. Hirata* (2009) 175 Cal.App.4th 1499, 1504 ["Stale information in a search warrant affidavit does not establish present probable cause for a search"].) No bright-line rule exists in determining at which point information is considered stale for purposes of demonstrating probable cause for a search warrant. (*Carrington*, *supra*, 47 Cal.4th at p.

15

163.) "Rather, 'the question of staleness depends on the facts of each case.' [Citation.]" (*Id.* at pp. 163-164.) "Courts have upheld warrants despite delays between evidence of criminal activity and the issuance of a warrant, when there is reason to believe that criminal activity is ongoing or that evidence of criminality remains on the premises. [Citations.]" (*Id.* at p. 164; see also *People v. Stipo* (2011) 195 Cal.App.4th 664, 672 ["Substantial delays do not render warrants stale where the defendant is not likely to dispose of the items police seek to seize"].)

D. *Analysis*

Defendant contends the information supporting the search warrant application did not provide probable cause to search. He argues: (1) the facts stated in the affidavit were not made close in time to the commission of the crime, so it was unlikely the items sought would still be in the house at the time of the search; (2) there is no evidence defendant used sex toys in other instances, so there is no evidence of a continuing course of criminal conduct; (3) the "mementos" referred to by the affiant did not include "sex toys"; and (4) the affidavit provided no current information that sex toys were still located in defendant's house.

Defendant argues that delays of longer than four weeks are generally considered insufficient to demonstrate present probable cause unless (1) there is evidence of ongoing criminal activity or (2) the nature of the activity is such as to justify the inference that it will continue until the time of the search. (See *People v. Hulland* (2003) 110 Cal.App.4th 1646, 1652.) But *Hulland* concerned probable cause for a warrant to search for controlled substances. (*Id.* at pp. 1649, 1652.) Limiting information to that less than four weeks old makes sense in the context of determining probable cause to search a premises suspected of containing evidence of a controlled substances operation, a highly transitory activity. (See, e.g., *People v. Brown* (1985) 166 Cal.App.3d 1166, 1169 [sale of cocaine or heroin highly transitory].) There is no such presumption of staleness here. Instead, as we have noted, appellate review of a claim of staleness is both fact-specific

16

and deferential. Depending on the nature of the crimes and the specific facts of the case, evidence set forth in the affidavit may be sufficiently fresh to provide probable cause even though the information is much older than the two years at issue in this case. (See, inter alia, *People v. Lazarus* (2015) 238 Cal.App.4th 734, 764-765 [in a 20-year-old murder investigation where the motive was "romantic obsession," it was probable that defendant would have "continued to retain items evidencing her relationship" with the victim and her husband].)

Here, the affiant provided information that people who commit sex offenses often retain trophies or mementos as a way to remember their crimes. The affiant asserted that the memento or trophy from a sex crime often becomes a prized possession of the person who committed the crime, unlikely to ever be discarded. This information constitutes evidence that items related to sex crimes are likely to be retained. Defendant does not claim that this statement is false or otherwise suspect; instead, he argues that the affidavit did not specifically discuss retaining sex toys. While it is true that this *specific* claim was not made by the affiant, the affidavit did generally discuss retention of evidence of sex crimes--trophies and mementos--that surely could be construed to include apparent instrumentalities, such as the dildos sought here.

Finally, we disagree that there is no probable cause because Doe did not provide current information that sex toys were still located in defendant's house. Doe provided information that defendant used a sex toy kept in his house to commit a sex offense against her. Combined with the affiant's assertion that people who commit sex offenses are likely to retain mementos of their crimes, there was a fair probability that defendant continued to keep the sex toys at his house. Defendant does not challenge the truth of this information, or the expert's qualifications, and, as we have described, the information he argues is absent from the affidavit is actually encompassed by the general assertions contained therein.

The information supporting the affidavit was not so stale as to invalidate its evidentiary value, and the magistrate had a substantial basis for concluding a fair probability existed that a search would uncover the sex toys used in the assault against Doe.  Therefore, we reject defendant's claim of error.

## DISPOSITION

The judgment is affirmed.


                                                /s/
                                            Duarte, J.


We concur:


   /s/
Hull, Acting P. J.


   /s/
Renner, J.