Filed 5/17/21  P. v. Martin CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C089082 |
| Plaintiff and Appellant, | (Super. Ct. No. 18CF00383) |
| v. | |
| DAVID EDWARD MARTIN, | |
| Defendant and Respondent. | |

The People appeal from an order dismissing an information charging defendant David Edward Martin with 23 counts of possessing an assault weapon.  The order dismissing was made after the trial court granted defendant's motion to quash the search warrant and suppress evidence under Penal Code section 1538.5.  The People contend the trial court erred in granting the motion to suppress and dismissing the charges, as the magistrate had a substantial basis to find probable cause and properly issued the warrant.

1

We agree. Accordingly, we conclude that the trial court erred and reverse the order of dismissal.[1]

BACKGROUND

Defendant was charged with 23 counts of possessing an assault weapon (Pen. Code, § 30605, subd. (a)). Law enforcement officers found the guns at defendant's home during the execution of a search warrant. Defendant filed a motion to quash the search warrant and suppress evidence under Penal Code section 1538.5. Defendant contended the search warrant affidavit lacked probable cause because: (1) it was based on stale information; and (2) it did not present evidence defendant possessed equipment for gunsmithing. Defendant also argued the affiant was a federal agent and not a peace officer who could execute a warrant issued by a state court magistrate. The People countered: (1) the delay between the affidavit and the service of the warrant did not render it stale and negate the probable cause, particularly as the case involved firearms; and (2) the lack of evidence of gunsmithing tools did not negate the substantial basis for the issuance of the warrant. The People also argued the participation of federal agents did not invalidate the warrant.

*The Affidavit*

Special Agent Erik Crowder of the United States Department of Justice, Bureau of Alcohol, Tobacco, and Firearms (ATF) has been an ATF special agent for 16 years, has training in federal firearms laws and regulation, and has investigated, or participated in investigation, of at least 100 cases involving firearm and/or drug violations of state and federal laws, including cases involving manufacturing and possession of firearms.

---

[1] Because of this conclusion, we need not address the People's contention that even if the warrant was not properly issued, the officers executing it reasonably relied on the good faith exception.

2

In the course of his investigation of alleged bankruptcy fraud[2] committed by defendant, Agent Crowder learned defendant was purchasing de-milled firearm pieces. Agent Crowder believed defendant was purchasing the de-milled firearm pieces to rebuild machine guns, in violation of California law.[3]

Defendant was a retired Butte County deputy sheriff. Agent Crowder spoke with Captain Dutch from the sheriff's department. Captain Dutch "described [defendant] as a 'fringe' person who lives within a 'compound' with a 'crows nest.' " He also described defendant as a "firearms enthusiast." Captain Dutch was not aware of defendant having been in any trouble, and did not believe he was a threat.

A query to the California Automated Firearms System (AFS)[4] database showed defendant had at least 87 firearms associated to him. In Agent Crowder's experience, people with firearms associated to them tend to also have other firearms not associated to them in AFS. Agent Crowder stated it was a logical presumption that defendant had more than 87 firearms associated to him.

---

[2] The alleged fraud was that defendant did not declare ownership of any of the 87 firearms associated with him in the California Automated Firearms System in his bankruptcy filing listing his assets and liabilities. Records suggested just 48 of those firearms were valued at between $19,745 and $47,165. These firearms were acquired through legal means.

[3] Crowder cited Penal Code section 12220, subdivision (b). "In 2012, it was renumbered to Penal Code section 32625 as part of the Legislature's effort to make numerous nonsubstantive revisions to the deadly weapons statutes. (Pen. Code, § 16005; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1080 (2009-2010 Reg. Sess.) as amended Mar. 23, 2010.)" (*People v. May* (2020) 47 Cal.App.5th 1001, 1006, fn. 4.) Penal Code section 32625 continued "former Section 12220 without substantive change." (Cal. Law Revision Com. Com., 51D Pt. 4 West's Ann. Pen. Code (2012 ed.) foll. § 32625, p.477.)

[4] The AFS is the state information repository for all handguns sold since 1979, all assault weapons since 1989, and all rifle and shotgun sales since 2014. All legal sales and/or transfers are recorded in AFS.

Agent Crowder found two e-mail addresses listed for defendant. One of defendant's e-mail addresses was used by a buyer on Gunbroker.com. In August 2016, defendant purchased " 'Polish PPS-43 parts.' " The Polish PPS-43 is a simply designed Russian submachine gun.

In September 2016, defendant purchased a " 'Sten MK III Front End Tube with Original Barrel.' " The Sten MK is a simply designed British submachine gun. In December 2016, defendant purchased a " 'TSMG 1928 Trigger Frame piece (rear section),' " and two " 'TSMG M1 Receiver, Trigger Frame, demil pieces.' " The Thompson is a simply designed American submachine gun, also known as a "Tommy Gun."[5] Defendant also purchased a " 'Husquvarna M/1940 demil pistols, lathi.' " Defendant had a Husqvarna Lathi associated with him in AFS.

"[F]irearms can be de-milled and are no longer classified as firearms if done so to a defined level." Based on the pictures of the items purchased by defendant, and the fact that they were shipped without a federal firearms license, Agent Crowder presumed defendant's purchases had been de-milled to that level. The ATF describes the procedures of demilitarizing a gun, thereby rendering it lawful to sell on the open market. The procedure involves destroying the frame or receiver "in a manner that will prevent its function and future use as a firearm. A proper method of destroying this firearm is to cut the receiver into separate pieces."[6]

Based on Agent Crowder's "training, experience and discussions with other investigators gun enthusiasts will often purchase multiple firearm's [*sic*] pieces of a once

---

[5] The affidavit includes additional purchases by defendant, but those do not have corresponding declarations by Agent Crowder tying them to machine guns.

[6] We grant defendant's request for judicial notice as to the chapter entitled "Machinegun Destruction" in the ATF Guidebook—Importation & Verification of Firearms, Ammunition, and Implements of War and ATF Ruling 2003-2.

4

complete firearm in this particular case machine gun(s). They do this for multiple reasons, either to repair existing firearms they maintain [as defendant with the Husqvarna]. Or as in the other cases . . . I believe in order to trim, fit and re-weld the firearms parts together in order to produce a functioning machinegun." Doing so would violate both federal and state law.

Pursuant to a search warrant, Agent Crowder received defendant's bank records in June 2017. Between March and August 2016, defendant made over $4,500 in payments to vendors that sell guns and/or gun accessories. This was over 50 percent of his total credit card expenditures during this period. Almost $3,000 of those were four purchases from a vendor that specialized in vintage and obsolete gun parts, and " 'hard to find parts for commercial and military firearms of U.S. and foreign manufacture,' " and other purchases were from a vendor that had surrendered their federal firearms license years earlier. Defendant also made 14 payments using PayPal payment services. Because PayPal has "a heightened level of anonymity" and some ambiguity in its transactions, it is an attractive service to use when purchasing items associated with criminal activity.

Agent Crowder declared that repeated firearm trafficking, manufacturing, or enthusiast activity continues "over lengthy periods of time" as many of the component parts and documentary evidence is not itself illegal to possess. It is also common practice for firearm traffickers, manufacturers, or enthusiasts "to maintain personal property used or obtained in their criminal activities and which constitute evidence of their crimes for extended periods of time." In Agent Crowder's training and experience, "where criminal activity is long-term or ongoing, equipment and records of the crime will be kept for some period of time."

Based on Agent Crowder's training and experience, and discussions with other investigators, "gun enthusiasts such as [defendant] would unlikely destroy and/or remove from where they reside firearms, not only for their monetary value but also their extrinsic value." In Agent Crowder's experience, "persons purchasing machine gun parts

5

(especially different iterations of the same part) are doing so not to display them (as they constitute such a small piece of the frame or receiver) but rather purchase multiple parts in hopes of fitting, re-welding and/or rebuilding what would constitute a machine gun under both State and Federal law, in direct violation of both." The other parts needed to build a functioning machine gun are not federally regulated and are available through multiple unregulated nontracked open sources. Once the frame or receiver is rebuilt out of smaller de-milled parts, it is easy to assemble the firearm with the other unregulated parts.

Agent Crowder believed defendant "has purchased several different parts of 'de-milled' machine guns in an attempt to rebuild the machine gun(s) receiver and to ultimately assemble the receivers with unregulated parts producing a functioning machine gun(s)." On January 16, 2018, Agent Crowder sought a warrant to search defendant's property for evidence of defendant building or rebuilding machine guns. The district attorney reviewed and approved the request as to form. The magistrate found probable cause and issued the search warrant.

*Trial Court Ruling*

The trial court heard additional argument from the parties on the validity of the search warrant. The trial court noted there were "deficiencies with respect to the warrant's issuance and execution" based on the federal agent's participation, but did not quash the warrant on that basis.

The trial court reviewed the affidavit and concluded the facts supporting a finding of probable cause were limited to defendant's purchase of de-milled gun parts, with nothing suggesting such purchases or possession violated any law or that defendant had anything to do with machine guns. Accordingly, the court concluded that the affidavit lacked probable cause for the issuance of the warrant. The court also noted the last investigative efforts documented in the affidavit took place approximately seven months prior to the federal agent seeking the warrant. Accordingly, the trial court found the

6

information too stale to be reliable.  Finally, the trial court concluded the warrant was so lacking in indicia of probable cause that the good faith exception under *United States v. Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677] did not apply.  Based on these conclusions, the trial court granted the motion to quash and ordered the evidence seized in the execution of the warrant suppressed.

The People moved for reconsideration, arguing there was a substantial basis for issuing the warrant and that the information was not stale, because there was a substantial basis to believe the evidence would still be present at the location specified.  The motion also included declarations of both the affiant and a local peace officer involved in serving and executing the warrant, as to both the issue of the propriety of the federal officer's involvement and the applicability of the good faith exception.  The trial court again reviewed the information in the affidavit and found there was nothing in it to "suggest that [defendant] ever had anything to do with manufacturing machine guns."  The trial court also reiterated its conclusion the information in the affidavit was stale.  The trial court denied the motion for reconsideration.  Given the suppression of the evidence, the trial court dismissed the charges under Penal Code section 1385.

DISCUSSION

The People appeal the order of dismissal, contending the trial court erred in granting the motion to suppress.  Specifically, the People argue the magistrate had a substantial basis to find probable cause based on the quantity and nature of machine gun parts purchases by defendant and Agent Crowder's experience and training.  The People also contend the facts in the affidavit were not stale, because firearms and records of illegal firearm activity are regularly kept for long periods of time.

*Legal Background*

"In reviewing a search conducted pursuant to a warrant, an appellate court inquires 'whether the magistrate had a substantial basis for concluding a fair probability existed that a search would uncover wrongdoing.'  (*People v. Kraft* (2000) 23 Cal.4th 978, 1040,

7

citing *Illinois v. Gates* (1983) 462 U.S. 213, 238-239 [76 L.Ed.2d 527].)" (*People v. Carrington* (2009) 47 Cal.4th 145, 161 (*Carrington*).) Probable cause exists for a search warrant when there is a fair probability that contraband or evidence of a crime will be found in the place to be searched. (*Illinois v. Gates, supra*, 462 U.S. at p. 238.) The issuing magistrate need only make "a practical, common-sense decision . . . , given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information . . . ." (*Ibid*.) The probable cause standard is a " 'practical, nontechnical conception' " that focuses on probabilities that exist under a particular set of facts. (*Id*. at p. 231.) Probable cause describes reasons to be suspicious, not a prima facie case of guilt. (*People v. Thuss* (2003) 107 Cal.App.4th 221, 236.) The possibility of an innocent explanation for the facts in the affidavit " ' "does not deprive the [magistrate] of the capacity to entertain a reasonable suspicion . . . ." ' [Citation.]" (*People v. Tuadles* (1992) 7 Cal.App.4th 1777, 1784.)

"[L]aw enforcement officers may draw upon their expertise to interpret the facts in a search warrant application, and such expertise may be considered by the magistrate as a factor supporting probable cause." (*People v. Nicholls* (2008) 159 Cal.App.4th 703, 711.) " 'Reasonable suspicion' may be based not only upon the circumstances and conduct recited in the affidavit but also upon the affiant's interpretation of and opinion about those circumstances and conduct." (*People v. Tuadles, supra*, 7 Cal.App.4th at p. 1784.)

The magistrate is equally " 'entitled to rely upon the conclusions of experienced law enforcement officers in weighing the evidence supporting a request for a search warrant as to where evidence of crime is likely to be found. [Citation.] It is not essential that there be direct evidence that such evidence will be at a particular location. Rather, the magistrate " 'is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.' " [Citation.]' [Citations.]" (*People v. Lazarus* (2015) 238 Cal.App.4th 734, 764.)

Probable cause to support a search cannot properly be based on old, stale information.  "The question of staleness concerns whether facts supporting the warrant application establish it is substantially probable the evidence sought will *still* be at the location at the time of the search.  'No bright-line rule defines the point at which information is considered stale.  [Citation.]  Rather, "the question of staleness depends on the facts of each case." [Citation.]  "If circumstances would justify a person of ordinary prudence to conclude that an activity had continued to the present time, then the passage of time will not render the information stale." '  [Citation.]"  (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 370.)  "Courts have upheld warrants despite delays between evidence of criminal activity and the issuance of a warrant, when there is reason to believe that criminal activity is ongoing or that evidence of criminality remains on the premises.  [Citations.]"  (*Carrington, supra*, 47 Cal.4th at p. 164; see also *People v. Stipo* (2011) 195 Cal.App.4th 664, 672 ["Substantial delays do not render warrants stale where the defendant is not likely to dispose of the items police seek to seize"].)  In cases involving ongoing enterprises, lapses of months and even years in some circumstances do not "render the information in an affidavit too stale to support probable cause.  [Citations.]"  (*U.S. v. Fernandez* (9th Cir. 2004) 388 F.3d 1199, 1254 [five-month old wiretapped statements of Mexican mafia defendant stating he possessed guns at his home held not to be stale when considered with affiant's experience investigating that gang].)

"Whether an affidavit provided the magistrate ' "substantial basis" ' for concluding there was probable cause is an issue of law 'subject to our independent review.'  (*People v. Camarella* (1991) 54 Cal.3d 592, 601.)  But, because '[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause,' we accord deference to the magistrate's determination and ' "doubtful or marginal" ' cases are to be resolved with a preference for upholding a search under a warrant.  (*United States v. Leon* (1984) 468 U.S. 897, 914 [82 L.Ed.2d 677]; see also [*Illinois v.*] *Gates*, [supra, 462 U.S.] at pp. 236-237 & fn. 10; *People v. Weiss* (1999)

9

20 Cal.4th 1073, 1082).'' (*People v. French* (2011) 201 Cal.App.4th 1307, 1315; *Carrington, supra,* 47 Cal.4th at p. 161.) In addition, because courts have a '' 'strong policy favoring search by warrant rather than upon other allowable basis[,]' [Citations.] . . . when, as here, the police do obtain a warrant, that warrant is presumed valid.'' (*People v. Amador* (2000) 24 Cal.4th 387, 393.) Ultimately, '' 'the magistrate's determination will not be overturned unless the supporting affidavit fails as a matter of law to support the finding of probable cause. [Citations.]' [Citation.]'' (*French, supra*, at p. 1315.)

*Analysis*

Agent Crowder has significant experience investigating cases involving the illegal manufacture of firearms. Local law enforcement described defendant as a '' 'fringe' '' person and a firearm enthusiast. He had at least 87 firearms associated to him. Defendant made numerous purchases of de-milled gun parts from internet sites. These purchases represented over 50 percent of his total credit card purchases, and the majority of the purchases were from a vendor specializing in vintage or obsolete gun parts for commercial and military firearms. Defendant made these purchases utilizing a service that would conceal the nature of his purchases and provide heightened anonymity. These purchases included parts for one of the firearms associated with him; Agent Crowder concluded defendant purchased these parts to repair his existing firearms. Over the course of a few months, defendant also purchased multiple de-milled machine gun parts. Based on Agent Crowder's experience and training, given their small size and that there were different iterations of the same part, these parts were not purchased for display, but to trim, fit and reweld the parts together to build a functioning machine gun.

Agent Crowder also declared, based on his experience and training that where the criminal activity is long-term and ongoing, the evidence of the criminal activity will be maintained for a long time. Firearm manufacturing is such a long-term ongoing criminal activity, and it is common practice for those engaged in manufacturing firearms to keep

the evidence of their criminal activity for extended periods of time. In addition, gun enthusiasts are unlikely to destroy or remove the firearms from their homes.

Defendant does not claim any of these assertions in the affidavit were false or inaccurate.[7] Instead he argues the assertions are an insufficient basis to serve as probable cause and the information was stale. Agent Crowder set forth evidence of purchases of de-milled machine gun parts, and his conclusions based on his training and experience as to how and why such purchases are made, viz.: to rebuild machine guns, a violation of California law. The magistrate was entitled to rely on both the circumstances and conduct, and Agent Crowder's interpretation of and opinion about those circumstances and conduct, in concluding there was probable cause. Agent Crowder also stated that based on the nature of the crime and the people who commit such crimes, the evidence of such criminal activity was likely to be retained for extended periods of time. Thus, although seven months elapsed between the last investigative efforts and the issuance of the warrant, there was reason to believe that evidence of manufacturing machine guns was likely to remain at defendant's home. This satisfied the requirement that it be substantially probable the evidence would still be at the location.

Applying the presumptions to the issuance of the warrant and showing appropriate deference to the magistrate's conclusion, we conclude, given the totality of the circumstances, there was a substantial basis for the magistrate's conclusion that there was a fair probability that contraband or evidence of a crime would be found in the place to be

---

[7] To the extent defendant is claiming Agent Crowder's description of the purchased machine gun parts was inaccurate, we reject that claim. The ATF definitions are more specific and detailed than Agent Crowder's but they essentially describe the process of rendering the machine guns incapable of being used as a firearm. They do not indicate the component parts could never again be reconfigured, trimmed, and assembled in such a way as to make an operable machine gun.

searched.  Accordingly, the trial court erred in granting the motion to suppress and dismissing the charges.

## DISPOSITION

The trial court's order granting defendant's motion to suppress and the judgment of dismissal are reversed and the matter is remanded for further proceedings.


　　　　　　　　　　　/s/
　　　　　　　　　　　RAYE, P. J.



We concur:



　　/s/
MAURO, J.



　　/s/
HOCH, J.